**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

TADLOCK PAINTING COMPANY,
Plaintiff-Appellee,

v.                                                                No. 93-2021

THE MARYLAND CASUALTY COMPANY,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
C. Weston Houck, Chief District Judge.
(CA-91-3352)

Argued: June 8, 1994

Decided: September 20, 1996

Before WIDENER, MURNAGHAN, and WILKINS,*
Circuit Judges.

_____

Affirmed in part, reversed in part, and remanded by unpublished per
curiam opinion.

_____

**COUNSEL**

**ARGUED:** E. Charles Dann, Jr., GOODELL, DEVRIES, LEECH &
GRAY, Baltimore, Maryland, for Appellant. John Leon Schurlknight,
Florence, South Carolina, for Appellee. **ON BRIEF:** Stefan A. Hage-
rup, GOODELL, DEVRIES, LEECH & GRAY, Baltimore, Mary-
land, for Appellant.

_____

*Judge Wilkins heard oral argument in this case but recused himself
after certification to the Supreme Court of South Carolina and did not
participate in the consideration of this appeal. The opinion is filed by a
quorum of the panel pursuant to 28 U.S.C. § 46(d).

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

I.

In April 1990, Tadlock Painting Company, based in Darlington, South Carolina, began a painting project at an industrial job site owned by Cargill, Inc. Later that year, Tadlock was notified that "overspray" paint had accumulated on nearby cars. Tadlock was able to clean the cars at its own expense, without involving its insurer, Maryland Casualty Company. In October 1990, Tadlock again experienced overspray paint problems, damaging numerous cars. Tadlock decided to let its insurance company resolve the claims, so notified its local Maryland Casualty agent in Darlington, who, in turn, contacted Cargill and asked for information regarding the claims. On November 9, 1990, Tadlock's local agent received the information from Cargill and filed a claim form on Tadlock's behalf with Maryland Casualty's office in Greenville, South Carolina.

Maryland Casualty interviewed Dewey Tadlock, the president of Tadlock Painting, on November 29, 1990. During this same time period, beginning in early October 1990, a number of internal memoranda, telephone calls, and notes were made among different employees of Maryland Casualty. Apparently, an overspray paint claim was unusual enough to prompt considerable discussion about how best to handle it. On January 18, 1991, a Maryland Casualty employee who was working on Tadlock's claim wrote to Maryland Casualty's home office and asked for information about the status of the claim. The memorandum noted that Maryland Casualty had been receiving a number of telephone calls from representatives of Cargill and Tadlock. On January 21, 1991, Maryland Casualty sent Tadlock a reservation-of-rights letter, listing the failure timely to notify Maryland Casualty of the claims, the possibility that the claim involved the discharge of pollutants, and the $500 per-claim deductible as possible bases on which Maryland Casualty might deny the claim.

2

After sending the January 21 letter to Tadlock, Maryland Casualty employees again engaged in a series of discussions regarding Tadlock's claim. On February 14, 1991, Maryland Casualty interviewed Mr. Tadlock a second time. No vehicle inspections were performed during that meeting. Maryland Casualty apparently had decided to delay inspection of the damaged vehicles until it could decide whether there was coverage under the policy.

On March 7, 1991, Mr. Tadlock called Maryland Casualty and told it that Cargill had threatened legal action against Tadlock, Maryland Casualty, and Tadlock's local Maryland Casualty agent. Maryland Casualty wrote to Tadlock the next day, informing it that certain requested information had not been received from Cargill, and no coverage decision could be made without it. Internal correspondence reveals that Maryland Casualty may have been contemplating a contributory negligence defense.

On March 25, 1991, Maryland Casualty sent a letter to Tadlock stating that it was exercising its discretionary right under the policy to negotiate and settle the claims, although it would do so under a reservation of rights because it had not been timely notified of the claim. The letter further stated that the applicable deductible was $500 per claim and that it would forward a request for reimbursement after the negotiations had been completed. On April 25, 1991, Mr. Tadlock had a conversation with an employee at Maryland Casualty in which Mr. Tadlock disputed the application of the deductible. Rather than applying the deductible on a per-claim basis, as the contract explicitly provides, he apparently believed that the policy contained a one-time deductible of $500.* The next day, Maryland Casualty sent Tadlock a copy of the endorsement containing a $500 per-claim deductible. On May 16, 1991, Maryland Casualty sent a letter to Tadlock requesting acknowledgment of the deductible and stating that it must have written confirmation from Tadlock that it would pay the deductible before Maryland Casualty would arrange for inspection and cleaning of the damaged cars. Tadlock never sent the requested confirmation, so Maryland Casualty did not proceed further with the claim. Mr.

_____

*The District Court granted Maryland Casualty's motion for partial summary judgment on the deductible issue. Tadlock has not appealed that ruling.

3

Tadlock later personally settled each of the claims under $500: he would later testify that he so settled at least 70 claims, and that there were four or five claims above $500 that he did not settle.

Thereafter, because of the delay involved in cleaning up the Cargill employees' cars, Cargill apparently refused to consider Tadlock for any of its painting jobs. According to Mr. Tadlock, Tadlock had been Cargill's main painting contractor since 1984 but was not hired for certain other painting jobs after the overspray incident.

Tadlock filed a complaint against Maryland Casualty in the South Carolina Court of Common Pleas on October 8, 1991, seeking lost profits, punitive damages, costs, and attorneys' fees, together exceeding $2 million. Maryland Casualty then removed the action to the United States District Court for the District of South Carolina. After Tadlock had presented its case at trial, after both parties had rested, and again following entry of the verdict, the District Court denied Maryland Casualty's motions for judgment as a matter of law with respect to liability for both compensatory and punitive damages. The District Court rested its decision in large part upon its belief that Tadlock could proceed on the theory that Maryland Casualty had breached an implied covenant of good faith and fair dealing in its handling of Tadlock's claim, even in the absence of an express contractual duty to investigate the claim. The jury returned a verdict for Tadlock in the amount of $15,552, which represented a twenty percent profit on the jobs Tadlock would have performed for Cargill had the insurance claim been handled in a more timely fashion, plus an amount to compensate Tadlock for the expense of appraisals incurred when Mr. Tadlock personally settled the claims. In a separate verdict, the jury also awarded Tadlock $200,000 in punitive damages.

After various unsuccessful post-trial motions--including motions for a new trial and for a reduction of the punitive damages award-- Maryland Casualty appealed. The company contended that South Carolina law does not require an insurance carrier to investigate and settle third-party claims when no suit has been filed against its insured and in the absence of contractual language to the contrary. Maryland Casualty also argued that, even if an implied covenant of good faith and fair dealing did apply, the District Court had erred when it denied the company's motions for judgment because Tadlock had not pres-

4

ented sufficient evidence to persuade a reasonable juror that the company had violated such a covenant or that $15,552 in compensatory damages or punitive damages in any amount were warranted. Maryland Casualty also contended that, in the absence of any proof of a conflict of interest, the District Court had erred when it told the jury that, when there is a conflict of interest between an insurer and an insured, the insured's interest must take precedence.

Tadlock argued that, under South Carolina law, an insurer's bad-faith failure to investigate a claim constitutes a breach of an implied covenant of good faith and fair dealing. Tadlock disputed Maryland Casualty's other allegations of error as well.

Finding no controlling South Carolina precedent on the implied covenant issue, we certified the question to the Supreme Court of South Carolina. On July 15, 1996, that court issued its response. After reviewing authorities in South Carolina and other jurisdictions, the court stated:

> We recognize the existence of a cause of action for breach of the implied covenant of good faith and fair dealing by an insured against his or her insurer for consequential damages allegedly suffered because of the insurer's bad faith handling of third party claims. Furthermore, we decline to make breach of an express contractual provision a prerequisite to bringing the action.

Tadlock Painting Co. v. Maryland Casualty Co. , No. 24465, at 18 (S.C. July 15, 1996).

II.

When an appellant objects to the jury instructions given at trial, we must determine "whether the instructions construed as a whole, and in light of the whole record, adequately informed the jury of the controlling legal principles without misleading or confusing the jury to the prejudice of the objecting party." Spell v. McDaniel, 824 F.2d 1380, 1395 (4th Cir. 1987), cert. denied, 484 U.S. 1027 (1988). Under that standard, we find the District Court's instructions concerning conflicts of interest unobjectionable.

5

III.

We will not overturn the District Court's denial of Maryland Casualty's motions for judgment as a matter of law unless, reviewing the matter de novo, and "without weighing the evidence or assessing witness credibility, we conclude that reasonable people could have returned a verdict only for" Maryland Casualty. Cooper v. Dyke, 814 F.2d 941, 944 (4th Cir. 1987). We must view the evidence in the light most favorable to Tadlock and give Tadlock the benefit of all reasonable inferences from the evidence presented at trial. Trandes Corp. v. Guy F. Atkinson Co., 996 F.2d 655, 660 (4th Cir.), cert. denied, 510 U.S. 965 (1993). "The grant or denial of a new trial is reviewed for abuse of discretion." Benesh v. Amphenol Corp. (In re Wildewood Litig.), 52 F.3d 499, 502 (4th Cir. 1995).

In light of the South Carolina Supreme Court's ruling, and having carefully reviewed the parties' arguments and the record, we have concluded that the District Court did not err when it denied Maryland Casualty's motions for judgment as a matter of law as to liability for compensatory damages. We find that a reasonable juror could conclude, based on the evidence presented, that Maryland Casualty did not handle Tadlock's claim fairly and in good faith and that Tadlock was therefore entitled to compensatory damages totaling $15,552. Because we find that there was sufficient evidence from which a reasonable juror could conclude that Maryland Casualty breached an implied covenant of good faith and fair dealing, we also hold that the District Court did not abuse its discretion when it denied Maryland Casualty's motion for a new trial.

With respect to the matter of punitive damages, though, we find that the District Court erred. Tadlock was entitled to receive punitive damages only if it demonstrated that Maryland Casualty had willfully, wantonly, or recklessly breached the implied covenant of good faith and fair dealing. Rogers v. Florence Printing Co., 106 S.E.2d 258, 263 (S.C. 1958). "The test by which a tort is to be characterized as reckless, wilful or wanton is whether it has been committed in such a manner or under such circumstances that a person of ordinary reason or prudence would then have been conscious of it as an invasion of the plaintiff's rights." Id. We find no evidence in the record that

6

could lead a reasonable juror to conclude that, in its handling of Tadlock's claim, Maryland Casualty so acted.

IV.

We therefore affirm the jury's award of $15,552 in compensatory damages, but remand the case to the District Court with instructions to vacate the award of $200,000 in punitive damages.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

7